**Maurice PURNELL, Appellant,**

v.

**MISSOURI DEPARTMENT OF CORRECTIONS, et al.,
Appellees.**

No. 84–1150.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1984.

Decided Feb. 1, 1985.

Missouri.

---

1. The Hon. H. Kenneth Wangelin, Senior United States District Judge for the Eastern District of

John Ashcroft, Atty. Gen., Rosalynn Van Heest, Asst. Atty. Gen., Jefferson City, Mo., for appellees.

F. Vincent Vatterott, St. Louis, Mo., for appellant.

Before BRIGHT, JOHN R. GIBSON and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Maurice Purnell appeals from denial of his petition for habeas corpus brought under 28 U.S.C. § 2254 (1982). The district court dismissed the petition because there had not been full exhaustion of the petition's claims in state court and because the state's inadvertent waiver of the exhaus-

tion requirement was not effective. We conclude that the waiver was effective and remand with directions that the district court consider Purnell's petition.

Purnell was convicted of rape, robbery in the first degree, and operating a motor vehicle without the consent of the owner. He was sentenced to two life terms and a five-year term, all to run consecutively. The convictions were affirmed. *State v. Purnell*, 621 S.W.2d 277 (Mo.1981).

In his appeal to the Supreme Court of Missouri, Purnell argued that the trial court had "abused its discretion" in excluding "material parts of * * * [his] expert psychiatrist's testimony." *Id.* at 280. Purnell had been examined by Dr. Sadashir Parwatikar, a psychiatrist. The trial court refused to allow Dr. Parwatikar to answer a hypothetical question: Would certain assumed conduct of an assailant cause him to believe that person was mentally ill? The supreme court stated:

> We experience considerable difficulty in reducing this contention to a reviewable status. At no time during the discussion between counsel and the court did appellant state the purpose of the proposed testimony. In his brief to this court he states for the first time that "it goes to the identity of the assailant," * * which we consider to be contrary to his contention. We can surmise that perhaps appellant wanted to use this testimony as the basis to argue that he could not have been the assailant because the assailant was psychotic and he was not. However, if so, that reason was never communicated to the court. In fact, the discussion between counsel and the court indicates that the purpose was to show appellant was psychotic, and it is evident that the court had that impression. Since appellant did not enter a plea of not guilty by reason of "mental disease or defect" such evidence was not admissible for that purpose. * * *

> Generally speaking the admission or rejection of expert testimony such as we have here is a matter resting in the discretion of the trial judge. * * * In view

of what we consider to be inadequate presentment of the purpose of the interrogation, and the understandable position taken by the trial court, we cannot hold as a matter of law that the court abused its discretion in sustaining an objection to the hypothetical question.

*Id.* at 281 (citations omitted).

Purnell also argued in his appeal to the Supreme Court of Missouri that the trial court abused its discretion in not declaring a mistrial after the victim of the rape made prejudicial statements to the circuit attorney that tended to inflame the jury and cause undue sympathy for her. The supreme court stated:

> We find no reversible error in this situation for two reasons. In order to preserve such an incident as this for appellate review, there must be a timely and proper objection. * * * Appellant was aware of the conduct of the prosecutrix but apparently then considered it to be of insufficient importance to request any relief. At the time of the incident the trial court might have considered that some action by it other than a mistrial would have been appropriate, but appellant waited until the following morning, and he then requested no relief except the drastic remedy of a mistrial. This indicates, at least to us, that appellant was more interested in obtaining a circumstance to complain about on appeal than preventing any adverse reaction by the jury as a result of the incident.

> Also, the trial court observed the incident and determined it not to have been "particularly significant." It has long been the rule that the granting of a mistrial rests largely in the discretion of the trial court, and the appellate court determines only whether the trial court abused its discretion. * * * It cannot be said as a matter of law that in the circumstances of this case the trial court abused its discretion in refusing to declare a mistrial when finally requested.

*Id.* at 283 (citations omitted).

Following his unsuccessful appeal, Purnell filed a petition for a writ of habeas

corpus. Of the several grounds in the petition, two concerned a violation of Purnell's sixth amendment rights in the two instances at trial discussed above. After the district court issued a show cause order regarding the petition, the State of Missouri, in response, conceded that Purnell had exhausted all habeas grounds in his appeal.[1] The district court, however, believing there was substantial doubt whether all grounds had been exhausted, appointed counsel and requested briefs on the issue. The state then retracted its position on exhaustion.

The district court ultimately determined that there was failure to exhaust the two grounds for habeas relief referred to above, since both were presented to the Supreme Court of Missouri only as alleged abuses of discretion in evidentiary rulings. The district court further determined that since the state had made an inadvertent concession, it would reject it as an effective waiver of exhaustion. Because the petition contained both exhausted and unexhausted claims, it was dismissed.

## I.

Purnell first argues that the district court erred in finding two of his habeas claims unexhausted and in therefore dismissing his habeas petition under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (total exhaustion of habeas claims in state courts required). *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), states the tests for judging whether a claim has been exhausted: "[A] federal habeas petitioner * * [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his consti-

tutional claim." *Id.* at 6, 103 S.Ct. at 217 (citing *Picard v. Connor*, 404 U.S. 270, 276–77, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971)). Further, the petitioner "must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim." *Id.* (citing *Picard*, 404 U.S. at 277–78, 92 S.Ct. at 513).

In *Thomas v. Wyrick*, 622 F.2d 411, 412 (8th Cir.1980), *cert. denied*, 459 U.S. 1175, 103 S.Ct. 824, 74 L.Ed.2d 1020 (1983), the habeas petitioner had previously argued to the Missouri Court of Appeals that the failure of the trial court to allow him to call character witnesses was an abuse of discretion and "denied [him] a fair trial." We held that the

> reference in Thomas's brief in the Court of Appeals of Missouri to denial of a fair trial, without citation to any provision of the Federal Constitution or to any federal case, was not a sufficient presentation of the federal constitutional issue. It is not enough that Thomas presented all of the facts on which his federal constitutional claim would later be based. The substance of this claim, as a legal matter, was simply never presented to the state courts.

*Id.* at 413. *Thomas*, therefore, requires reference to the Constitution, a federal case, or a specific constitutional right to meet the "fair presentation" and "fair opportunity" tests. *See also Nelson v. Solem*, 714 F.2d 57 (8th Cir.1983) (no exhaustion where petitioner never used term "due process" and state court discerned no due process implications); *Hall v. Iowa*, 705 F.2d 283 (8th Cir.) (exhaustion where petitioner cited to case predicated on same federal ground as that contained in habeas

1. In its response, the state made the following statement:
   *Statement as to Exhaustion of State Remedies*
   In this habeas corpus action petitioner raises five grounds for relief. These are: (1) a ruling by the court excluding expert psychiatric testimony; (2) an evidentiary ruling allowing testimony concerning an exhibit which had not been disclosed to defense counsel pursuant to a discovery request; (3) the Court's failure to declare a mistrial after the victim made allegedly prejudicial statements to the circuit attorney in the

jury's presence; (4) arrest without probable cause, a suggestive lineup, and failure to give *Miranda* warnings and have counsel at the time of lineup; and (5) in-court and extrajudicial identifications by the victim on the basis of impermissibly suggestive lineups. On appeal before the Supreme Court of Missouri petitioner raised all the above grounds. Accordingly, respondent concedes that petitioner has exhausted his available state remedies and this Court may hear his claims.

petition), *cert. denied,* —— U.S. ——, 104 S.Ct. 339, 78 L.Ed.2d 307 (1983); *Morrow v. Wyrick,* 646 F.2d 1229, 1232 (8th Cir.) (exhaustion where petitioner's basic argument regarding constitutional issues was discernible and included citations to relevant state cases), *cert. denied,* 454 U.S. 899, 102 S.Ct. 401, 70 L.Ed.2d 216 (1981); *United States ex rel. Diamond v. Wyrick,* 581 F.Supp. 881 (E.D.Mo.1984) (claim not exhausted where petitioner raised habeas claim on appeal but failed to do so at proper appellate level).

In the state courts, Purnell argued purely on evidentiary grounds that the trial court abused its discretion in excluding expert testimony. Similarly, he asserted no constitutional ground in arguing that the trial court abused its discretion in not declaring a mistrial after the victim of the rape made alleged inflammatory prejudicial statements. *Purnell,* 621 S.W.2d at 282. Under *Thomas,* Purnell has not exhausted his state remedies.[2]

Purnell also argues, however, that the Missouri Supreme Court "fully understood" the "constitutional implications" of the denial of the admission of the expert testimony, that it therefore had a fair opportunity to consider the constitutional claim, and that to hold otherwise would make his access to the federal courts dependent on the technicalities of citation form. Support for Purnell's position may be garnered from our recent observation that in determining if a state court has had the requisite fair opportunity to pass upon the federal constitutional grounds of a petitioner's claims, "[w]e must bear in mind that state courts, as co-equal guardians of constitutional rights, are able to recognize

federal constitutional issues even when no explicit reference is made to the federal constitution." *Graham v. Solem,* 728 F.2d 1533, 1536 (8th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984). In the present case, Purnell grounds such recognition of constitutional issues on one sentence of the Missouri Supreme Court's opinion: "We can surmise that perhaps appellant wanted to use this testimony as the basis to argue that he could not have been the assailant because the assailant was psychotic and he was not." *Purnell,* 621 S.W.2d at 281. Since the Supreme Court of Missouri understood the purpose of the proffered testimony, argues Purnell, it therefore understood the constitutional implications of the denial of its admission. However, the latter proposition does not immediately and obviously follow from the former, itself based on a highly tentative and speculative statement.[3]

■ In *Daye v. Attorney General of New York,* 696 F.2d 186 (2d Cir.1982) (en banc), *cert. denied,* —— U.S. ——, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984), the court applied a more lenient approach than that adopted in *Thomas.* The court there suggested that in addition to reliance on cases and specific provisions of the Constitution, a defendant might fairly present habeas claims to a state court by "assertion of the claims in terms so particular as to call to mind a specific right protected by the Constitution" or by "allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* at 194. As the *Daye* court observed, "The greatest difficulty arises when * * * the petitioner has described his claim in very broad

---

**2.** *Thomas* also provides that a district court may not dismiss a petition for failure to exhaust if no "presently available state procedure for the determination of the merits" of the habeas claim exists. 622 F.2d at 413; *see Moore v. Wyrick,* 668 F.2d 1007, 1009 (8th Cir.1982). The district court determined that under Missouri law Purnell still has postconviction remedies available to him in the Missouri courts and that no showing had been made that it would be futile for him to pursue those remedies. These determinations are not challenged on appeal.

**3.** Further, the sentence Purnell cites has no bearing on his constitutional claim based on the denial of a mistrial after alleged inflammatory statements by the victim of the rape. Purnell cites no passage from the opinion of the Supreme Court of Missouri and, after careful examination, we can find no passage that indicates constitutional dimensions of this claim were entertained.

terms, such as denial of a 'fair trial.'" *Id.* at 193. If, for example, a defendant were to claim deprivation of a fair trial because of admission into evidence of objectionable hearsay, factual allegations alone would not put the court on notice of a claimed constitutional violation. *Id.* Purnell's claim of deprivation of a fair trial because of the rejection on evidentiary grounds of expert testimony is similarly removed from the mainstream of constitutional litigation and was not couched in terms so as to call to mind specific constitutional rights. Thus, if the test of *Thomas* has been broadened by *Graham v. Solem* so that *Daye* is consistent with it (an issue we need not decide in this case), even under *Daye's* more lenient tests Purnell's claim of exhaustion must fail. We conclude that Purnell's claims were not fully exhausted in the state courts.

## II.

■ Purnell also argues that the district court erred in not recognizing that the state had waived the exhaustion requirement. The district court based its rejection on *Davis v. Campbell,* 608 F.2d 317, 320 (8th Cir.1979) (inadvertent waiver of exhaustion not recognized as express waiver). A state's waiver of exhaustion may be express or implicit, *see McGee v. Estelle,* 722 F.2d 1206, 1213 (5th Cir.1984) (implicit waiver where state did not make express waiver in asserting that it "believed" petitioner had exhausted state remedies); a state's statements regarding exhaustion may also be made either incorrectly, erroneously, and inadvertently or correctly and without error. *See* Comment, *State Waiver and Forfeiture of the Exhaustion Requirement in Habeas Corpus Actions,* 50 U.Chi.L.Rev. 354, 377 (1983). Therefore, *Davis* does not create a dichotomy between express and inadvertent waiver; rather, it suggests that mistaken or inadvertent statements regarding exhaustion cannot rise to the level of waiver at all. We believe, however, that when, as in the instant case, the state unequivocally concedes in pleadings that a petitioner's claims in the appropriate state courts have been exhausted, that concession constitutes an express waiver. There may be cases in which an evidentiary hearing is required to determine if actual waiver has occurred. Nevertheless, the consequences of a pleading may not be avoided merely by stating in conclusory fashion, as did the state in its reply brief, that the concession was "clearly inadvertent" or by claiming, as did the state in oral argument, that "a big mistake" had been made. Rule 11 of the Federal Rules of Civil Procedure provides that

> the signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact.

To allow the attorney general to avoid without consequence a pleading of exhaustion would not be consistent with the degree of responsibility allocated by the rule. We conclude that the state's statements in the responsive pleading constituted an express waiver of the exhaustion requirement.

■ This conclusion does not terminate our inquiry. Even if the attorney general made an express waiver, it does not follow that he had the power to do so. Although we have not expressly ruled on the issue, several of our cases have suggested in dicta that if a state has expressly waived the requirement, the federal court may accept the waiver. *See Collins v. Auger,* 577 F.2d 1107, 1108 (8th Cir.1978) (citing *Jenkins v. Fitzberger,* 440 F.2d 1188, 1189 (4th Cir.1971)), *cert. denied,* 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979); *Blackwell v. Wolff,* 454 F.2d 48, 50 (8th Cir.1972) (citing *Jenkins* ); *see also Batten v. Scurr,* 649 F.2d 564, 568 (8th Cir.1981) (strong indication that state believes its interests have been vindicated where state conceded issue in answer to habeas petition and did not raise issue on appeal). Of those circuits which have expressly ruled, the First, Third, Sixth and Tenth Circuits do not allow the state's attorney to waive the requirement. *See Bowen v. Tennessee,* 698

F.2d 241, 242–43 (6th Cir.1983) (en banc); *Naranjo v. Ricketts*, 696 F.2d 83, 87 (10th Cir.1982); *United States ex rel. Trantino v. Hatrack*, 563 F.2d 86, 96–98 (3d Cir. 1977), *cert. denied*, 435 U.S. 928, 98 S.Ct. 1499, 55 L.Ed.2d 524 (1978); *Needel v. Scafati*, 412 F.2d 761, 766 (1st Cir.), *cert. denied*, 396 U.S. 861, 90 S.Ct. 133, 24 L.Ed.2d 113 (1969). The Fourth, Fifth and Eleventh Circuits have held to the contrary. *See McGee v. Estelle*, 722 F.2d at 1213; *Thompson v. Wainwright*, 714 F.2d 1495, 1501–03 (11th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2180, 80 L.Ed.2d 562 (1984); *Jenkins v. Fitzberger*, 440 F.2d at 1189. It is generally agreed that the exhaustion requirement is not jurisdictional but is, rather, a matter of comity. *Fay v. Noia*, 372 U.S. 391, 420, 83 S.Ct. 822, 838, 9 L.Ed.2d 837 (1963). However, the circuits disagree over to whom comity is owed. In *Trantino v. Hatrack*, the court stated:

> "Comity," * * * is that measure of deference and consideration that the federal judiciary must afford to the co-equal judicial systems of the various states. Exhaustion, then, serves an interest *not* of state prosecutors but of state courts. It follows, therefore, that the state court interest which underlies the exhaustion requirements of § 2254(b) *cannot* be conceded or waived by state prosecutors—for the state court interest in having "an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" is simply not an interest that state prosecutors have been empowered to yield.

563 F.2d at 96 (footnote omitted); *accord Bowen*, 698 F.2d at 242–43; *Naranjo*, 696 F.2d at 86–87.

We believe that this view of comity is unnecessarily restrictive. Comity concerns the recognition that one sovereign extends to the legislative, executive, and judicial acts of another. *Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895). The doctrine applies to "proper relations between sovereign states, rather than between judicial systems." *Felder v. Estelle*, 693 F.2d 549, 554 (5th Cir.1982) (footnote omitted). As the court stated in *McGee:*

Deference is due the states, as governmental units, not their courts, their executives, or their legislatures, save as these bodies represent the state itself. * * * The doctrine of exhaustion of remedies is designed to allow the state as a government unit, not only its courts, to protect the constitutional rights of persons convicted by the state. The alleged abridgement of constitutional rights raised in a habeas proceeding is, indeed, usually charged to have resulted initially from conduct of the state's executive or legislature, not from action of its courts. As the chief legal officer of the state, the attorney general is the appropriate person to assert, or to waive, the state's right first to determine a claim that the state is holding a person in custody in violation of his federal constitutional or statutory rights.

722 F.2d at 1212.

Indeed, the nature of comity necessarily implies a power of waiver, since exhaustion "is designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings" and "is intended to give the state the *opportunity* for initial review." *Thompson*, 714 F.2d at 1504. A "deference" that rides roughshod over the state's own determination of whether further review is necessary is hardly deserving of the name.

Missouri provides by statute that its attorney general

> shall institute, in the name and on the behalf of the state, all civil suits and other proceedings at law or in equity requisite or necessary to protect the rights and interests of the state, and enforce any and all rights, interests or claims against any and all persons, firms or corporations in whatever court or jurisdiction such action may be necessary; and * * * may also appear and interplead, answer or defend, in any proceeding or tribunal in which the state's interests are involved.

Mo.Rev.Stat. § 27.060 (1978). When directed by the governor, he is to aid any prosecuting or circuit attorney in the discharge of his duties. Mo.Rev.Stat. § 27.030 (1978). He is required to issue opinions (which are entitled to great weight, *Fisher v. Independence,* 350 S.W.2d 268, 271 (Mo.Ct.App. 1961)) to the legislature, named executive officials and any circuit or prosecuting attorney on any question of law relating to their offices or duties. Mo.Rev.Stat. § 27.040 (1978). Case law in Missouri holds that it is for the attorney general to decide where and how to litigate issues. *State ex rel. Igoe v. Bradford,* 611 S.W.2d 343 (Mo. Ct.App.1980). Given the attorney general's wide powers, duties, responsibilities, and discretion, we believe it is not inappropriate that he also be allowed to waive exhaustion of remedies in a habeas case.

Further, if a petition contains both exhausted and unexhausted claims, the petitioner in essence may waive the exhaustion requirement by amending his petition to contain only exhausted claims, under the risk of forfeiture of later consideration of the unexhausted claims in federal court. *See Rose v. Lundy,* 455 U.S. at 514, 102 S.Ct. at 1201. We think it is proper that the state also be allowed the choice of proceeding in federal court by a waiver of the exhaustion requirement. In short, we believe that recognition of a state's power to waive the exhaustion requirement will promote federal-state relations, lead to more efficient use of judicial resources, expedite claims for federal relief, and encourage responsibility on the part of states' attorneys.

Since principles of comity are involved, it ordinarily will be appropriate for federal district courts to have the discretionary power to accept or reject a waiver of exhaustion. *See Thompson v. Wainwright,* 714 F.2d at 1509; *McGee v. Estelle,* 722 F.2d at 1214. However, we agree with the *McGee* court that "the extraordinary course" of rejection should be followed only when "avoidance of injustice or the public interest would manifestly be served." *Id.* In the instant case, we see no reason "to recognize the state's belated change of position." *Id.* We believe that the ultimate disposition of this case will be advanced by consideration of Purnell's claims on their merits. Accordingly, we remand with instructions that the district court accept the state's waiver of exhaustion and consider the habeas corpus petition on its merits.

BRIGHT, Circuit Judge, concurring in part and dissenting in part.

I concur in Part II of the opinion written by Judge John R. Gibson. I would, however, remand this case to the district court for a determination of the merits of the claim because I believe Purnell has exhausted his state remedies.

In his pro se petition for a writ of habeas corpus, Purnell asserted *inter alia* the following grounds for relief:

Ground (12) A-One: Petitioner is being held unlawfully and unconstitutionally restrained of his liberties, by the respondent named herein, inthat [sic] such is the unconstitutional product of the court abuse of its discretion, and out right denied petitioner his sixth amendment right to have a witness in his behalf to a material issue, in excluding expert psychiatrist;s [sic] testimony who had examined petitioner and found him mentally healthy and not psychotic, in view of the bizarre manner in which the alledged [sic] assailant conducted himself in the coarse [sic] of the rape, i.e. smearing feces on the victim and in her panty hose, this kind of behavior definitely exhibited a psychotic breakdown, which this expert could show the fact petitioner was not psychotic, and not likely to act in such a bizarre manner.

\* \* \*

Ground (12) C-Three: Petitioner is being held unconstitutionally restrained of his liberties by the respondent named herein, inthat [sic] petitioner was denied his sixth amendment right to a fair trial by a jury free from outside influence when the trial court refused to declare a mistrial upon defense counsel request, after victim-witness Judy Hampton during the

recess in front of and within the hearing of the jurors, made inflammatory prejudicial statements to the Circuit Attorney (referring to cross-examination by defense counsel. Siad [sic] statements tended to inflame the members of the jury and caused undue sympathy for the witness and thereby denied petitioner a fair trial.

These contentions raise evidentiary and trial issues which have been decided by the Missouri Supreme Court (see the discussion in Judge Gibson's opinion at 705–06).

In his habeas petition and his appeal to this court, Purnell raises these same issues but frames them as violations of his constitutional rights. The first claim concerning the admissibility of certain expert testimony merely presents an evidentiary issue for collateral review which Purnell labels as a sixth amendment violation. Whether this claim is framed as raising an evidentiary or a constitutional issue, the state court is likely to reach the same result reached in Purnell's direct appeals. In my view the claim is essentially frivolous and the purposes of *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) are not served by declining federal jurisdiction for lack of exhaustion in the state courts. *See Veneri v. State of Missouri*, 734 F.2d 391, 393 (8th Cir.1984).

The Missouri Supreme Court has also considered the second issue, relating to mistrial, and ruled that no reversible error occurred. Absent reversible error, no constitutional issue can arise. Again, if this claim were referred to the state court, the issue would be decided exactly as it was previously decided, regardless of whether the issue was characterized as a constitutional error or an abuse of the trial court's discretion.

Accordingly, referral of this case to the state courts would be futile and a waste of judicial time and energy. Thus, the result reached in Judge Gibson's opinion is clearly proper and I join in the result for the reasons stated in Part II of that opinion.

FAGG, Circuit Judge, concurring in part and dissenting in part.

I agree with the court that a state's inadvertent or mistaken waiver is not an effective waiver of the exhaustion requirement. Since I find a mistake clearly appearing in the record, I would hold that the state's waiver is ineffective. Having found no effective waiver, I would not address the issue of whether the state's attorney has authority to waive the exhaustion requirement. Even if I were to agree that the state's waiver is effective and that a state's attorney has the power to make such a waiver, I would remand to the district court for a discretionary determination of whether the waiver should be accepted.

The court recognizes that following *Davis v. Campbell*, 608 F.2d 317, 320 (8th Cir.1979), "mistaken or inadvertent statements regarding exhaustion cannot rise to the level of waiver at all," *ante* at 708, whether those statements are unequivocal or ambiguous. That the state's pleading concerning exhaustion is unequivocal on its face is irrelevant to the determination of whether a waiver is effective or, on the other hand, tainted by mistake or inadvertence. Here, the majority finds the state's contention at oral argument and in the appellate briefs that its concession was "a big mistake" insufficient to render this waiver ineffective. The court, however, ignores the evidence of mistake that clearly appears on the record.

In response to Purnell's petition, the state characterized Purnell's claims on exclusion of psychiatric testimony and failure to declare a mistrial as state law attacks on the district court's exercise of discretion. As such, the state was correct in pleading that Purnell "raised all the above grounds" before the Missouri Supreme Court on appeal and that the state consequently "concedes that [Purnell] has exhausted his available state remedies."

Despite the state's characterization, the district court found constitutional implications in Purnell's claims. After reading Purnell's state supreme court brief and the

Missouri Supreme Court's opinion, the district court became skeptical of whether Purnell had effectively raised his constitutional claims in state court and asked for briefs on the issue. The state then recognized its mistake, changed its position, and requested dismissal for failure to exhaust state remedies. The district court recognized that the state's assessment of Purnell's claims in its original pleading was mistaken because the petition raised constitutional claims that had not been effectively raised in state court.

The error clearly appears in the record before the district court: the state conceded exhaustion based on the mistaken premise that Purnell's habeas claims were the same nonconstitutional claims that had been presented to the state court in Purnell's direct appeal. In my view, the court should not extend that concession to embrace the constitutional claims addressed in Part I of the court's opinion. *Davis* holds that an erroneous concession that exhaustion has occurred is not an effective waiver. Since the record shows the state's concession was erroneous, *Davis* compels affirmance of the district court's dismissal for failure to exhaust state remedies. Thus it is not necessary or appropriate for us to address the issue of whether a state's attorney has power to make a waiver.

Even if I were to agree that Missouri's pleading constitutes an effective waiver of the exhaustion requirement and that the state's attorney has power to make that waiver, I would not direct the district court immediately to consider Purnell's petition on its merits. The court recognizes that "ordinarily it will be appropriate for federal district courts to have the discretionary power to accept or reject a waiver of exhaustion," *ante* at 710. I agree that a district court should be allowed to consider, subject to review for abuse of discretion, circumstances such as those discussed in *McGee v. Estelle*, 722 F.2d 1206, 1214 (5th Cir.1984), and *Thompson v. Wainwright*, 714 F.2d 1495, 1509 (11th Cir.1983), and reject even an effective waiver if justice or the public interest so requires. I also agree that rejection of a state's waiver may

be "'the extraordinary course,'" *ante* at 710. Nevertheless, the district court must consider whether to accept or reject a waiver in every case in which a waiver appears. Here, the district court made no such determination because it found there was no waiver. The majority's conclusion that "the ultimate disposition of this case will be advanced by consideration of Purnell's claims on their merits" invades the province of the district court and strips it of its discretionary power by requiring acceptance of the waiver on grounds of expediency alone.

I would affirm the district court's dismissal of Purnell's petition for failure to exhaust state remedies. Even if I thought the state had waived its right to insist on exhaustion, the district court should have an opportunity to determine whether that waiver should be accepted. Accordingly, I dissent from Part II of the court's opinion.