UTILICORP UNITED, INC. & SUBSIDIARIES, FORMERLY MISSOURI PUBLIC SERVICE CO., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8563–94.           Filed June 7, 1995.

*Michael H. Simonson* and *James G. Kreissman,* for petitioner.

*Peter J. Graziano* and *Pamela L. Cohen,* for respondent.

OPINION

HALPERN, *Judge:*

## I. *Introduction*

This case is before the Court on a motion in limine made by petitioner Utilicorp United, Inc.[1] By that motion, peti-

---

[1] Petitioners Utilicorp United, Inc., & Subsidiaries constitute an affiliated group of corpora-

tioner seeks to exclude from evidence the report and testimony of certain witnesses that respondent wishes to qualify as expert witnesses.

The principal issue in this case is the proper tax treatment of petitioner's 1987 purchase of an undivided 50-percent interest in certain assets of a hydroelectric project located in the State of Maine. In particular, petitioner challenges respondent's reallocation of a portion of the purchase price paid by petitioner from tangible assets to nondepreciable intangible assets (goodwill and going-concern value). In anticipation of trial, respondent served on petitioner (and lodged with the Court) a report (the report) addressing the value of the assets acquired by petitioner. The report was prepared by Martin D. Hanan (Hanan) and Richard H. Knoll (Knoll) of Business Valuation Services, Inc. The rationale of petitioner's motion in limine is as follows:

> Neither Mr. Hanan nor Mr. Knoll are licensed appraisers in the State of Maine or anywhere else. By preparing an appraisal of Maine property without a Maine appraisal license, Mr. Hanan and Mr. Knoll have committed a Class E crime under Maine law. Their live testimony in this case would also constitute a criminal act under Maine law. This Court should not permit or condone the commission of this crime and should exclude the Appraisal Report and preclude the testimony of Mr. Knoll and Mr. Hanan.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## II. *Background*

### A. *The Report*

The report consists of a 4-page letter, 33 pages of analysis, additional pages setting forth limiting conditions, the qualifications of Hanan and Knoll, exhibits, other matters, and an appendix. The report determines the fair market value of the undivided 50-percent interest in the assets purchased by petitioner to be $32,250,000. The report further determines that the fair market value of a 50-percent undivided interest

---

tions making a consolidated return of income. Petitioner Utilicorp United, Inc., is the common parent corporation of that affiliated group. The petition herein was filed by petitioner Utilicorp United, Inc., on its own behalf and as agent for the other members of the affiliated group. See sec. 1.1502–77(a), Income Tax Regs. Hereafter, we will refer to petitioner Utilicorp United, Inc., simply as petitioner.

in the total *tangible* assets purchased by petitioner is only $20,650,008. Both an exhibit included in the report and the four-page letter with which it begins include specific values for both improved and unimproved real property included in such tangible property. The letter states specifically that the authors thereof have reached conclusions as to the fair market value of (among other assets) such improved and unimproved real property.

The letter is addressed to Peter Graziano, one of respondent's counsel in this case. The first paragraph of the letter contains the following two sentences: "It is our understanding that the valuation was prepared for use by the Internal Revenue Service for income tax determination purposes. No other use for our analysis is intended or should be inferred." A similar statement appears on the last page of the analysis.

As set forth in the report, the qualifications of neither Hanan nor Knoll include being licensed to appraise real property by the State of Maine or any other State. The address of Business Valuation Services, Inc., is in Dallas, Texas.

## B. *Real Estate Appraisal Licensing and Certification Act*

It is unlawful under the laws of the State of Maine for any person not licensed as a real estate appraiser or registered as a real estate appraiser trainee to appraise for a fee real property located in the State. Me. Rev. Stat. Ann. tit. 32, sec. 13964 (West Supp. 1994) (section 13964). There is an exception, however, which permits real estate agents and brokers to prepare appraisals or opinions of market value "rendered for purposes other than for federally related transactions as defined in title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Public Law 101–73, or in the federal Office of Management and Budget Circular A–129." *Id.* sec. 13963 (section 13963). Sections 13963 and 13964 constitute part of Maine's Real Estate Appraisal Licensing and Certification Act (REALCA). *Id.* sec. 13961. Violations of REALCA constitute a class E crime. *Id.* sec. 13966. REALCA was enacted as section 3, chapter 806, 1989 Me. Laws (chapter 806).

REALCA also establishes a Board of Real Estate Appraisers, which board has various functions under REALCA. Me. Rev.

Stat. Ann. tit. 32, secs. 13967 and 13968. Because REALCA establishes a board to regulate a profession not previously regulated, Maine law requires that, before REALCA could be enacted, the legislature had to be provided with a report addressing, among other things, "The nature of the potential harm to the public if the occupation or activity is not regulated and the extent to which there is a threat to the public health or safety." Me. Rev. Stat. Ann. tit. 5, sec. 12015(3)(A). Section 5 of the law enacting REALCA (chapter 806) refers to that required report as follows:

Sec. 5. Preauthorization review. For purposes of the evaluation required by the Maine Revised Statutes, Title 5, section 12015, subsection 3, the results of the evaluation by the Joint Standing Committee on Business Legislation are that:

1. Billions of dollars in loans that are secured by real estate are advanced every year to Maine consumers for which there are no uniform guidelines on how the appraised values or the qualifications of the individual conducting the appraisal are established;

2. Consumers are occasionally swept up with enthusiasm over what may be an unrealistically inflated real estate market only to find that the resale value of their property is substantially lower in some future period;

3. Title XI of the federal Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Public Law 101–73, requires that, after July 1, 1991, all real estate appraisals in connection with federally related transactions must be performed by appraisers certified or licensed by the State; and

4. The State must establish a process for licensing real estate appraisers in order to assure that uniform competent guidelines are established for the rendering of real estate appraisals and to fulfill the federal mandate.

Virtually identical language indicating legislative purpose is contained in a preamble to chapter 806.

### III. *Parties' Arguments*

Petitioner argues that the report was issued in violation of REALCA and that, if Hanan and Knoll were to testify in this Court, their testimony also would violate REALCA. Petitioner makes no claim that Hanan and Knoll are unqualified as expert witnesses within the meaning of rule 702 of the Federal Rules of Evidence. Nor does petitioner seek otherwise to exclude the report and testimony of Hanan and Knoll under the Federal Rules of Evidence. Rather, petitioner invokes the principle of comity and asks the Court to exclude the report

and testimony on the ground that the report does, and the testimony would, "violate Maine criminal law".

Respondent makes numerous arguments in support of her objection: (1) The Court does not have jurisdiction to consider whether the report violates REALCA; (2) the principle of comity is inapplicable to this case; (3) the report does not constitute an appraisal of real property within the meaning of REALCA; and (4) even if the report does constitute an appraisal of real property within the meaning of REALCA, REALCA is inapplicable in the circumstances of this case.

## IV. *Discussion*

### A. *Jurisdiction*

Respondent argues that this Court is a court of limited jurisdiction, which lacks jurisdiction to determine whether or not Hanan and Knoll violated REALCA or committed a class E crime under Maine law.

The long and the short of it is that we are not being asked to consider whether Hanan and Knoll violated REALCA for any purpose other than determining the admissibility of the report and of Hanan and Knoll's testimony as evidence in this case. Of course we are a court of limited authority, and may exercise jurisdiction only to the extent expressly provided by Congress. Sec. 7442; e.g., *Kluger v. Commissioner*, 83 T.C. 309, 314 (1984) (so stating). Nevertheless, as we stated in *Kluger*, where the issue was the validity of an order issued by a Federal District Court under rule 6(e) of the Federal Rules of Criminal Procedure (authorizing the release of certain grand jury material):

Determining the admissibility of evidence is part of the normal power of any trial court and is essential to the proper discharge of its duties. * * * Indeed, this Court would be derelict in its duties if it refused to entertain questions regarding the admissibility of evidence solely on the ground that such an inquiry is not a proper function of this Court. * * * It is therefore clear that this Court has jurisdictional authority to entertain questions concerning the admissibility of evidence in proceedings pending before it, as a necessary incident to its statutory power to redetermine proposed income tax deficiencies. [*Kluger v. Commissioner, supra* at 315.]

*Jones v. Commissioner*, 97 T.C. 7, 17 (1991) (quoting *Kluger* with approval).

We conclude that we have jurisdiction to determine the admissibility of the report and any testimony by Hanan and Knoll that may be offered in support of it.

### B. *Comity*

On the assumption that the actions of Hanan and Knoll violate REALCA, petitioner argues that, "to accord appropriate respect to the laws of the State of Maine, the Court should prohibit Mr. Knoll and Mr. Hanan from continuing to commit a criminal violation of Maine law." As a predicate for such action, petitioner claims:

Principles of comity and respect for federalism are well-established in federal law. *See, e.g., Younger v. Harris,* 401 U.S. 37, 44 (1971) (comity reflects "a system in which there is sensitivity to the legitimate interests of both the State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States").

We are familiar with the principle of comity. See, e.g., *Arc Elec. Constr. Co. v. Commissioner,* 91 T.C. 947, 952–953 (1988); *Kluger v. Commissioner, supra* at 320–321. We do not believe that comity requires the exclusion from evidence of the report or the testimony of Hanan and Knoll. Our reasons for reaching that conclusion, however, are somewhat different from respondent's. Respondent argues that, since there has been no decision of a court of Maine that Hanan and Knoll violated REALCA, comity is inapplicable. Respondent may be too restrictive in her view of comity. See, e.g., *Purnell v. Missouri Dept. of Corrections,* 753 F.2d 703, 709 (8th Cir. 1985) ("Comity concerns the recognition that one sovereign extends to the legislative, executive, and judicial acts of another."). Nevertheless, we will not exclude either the report or the testimony of Hanan and Knoll because we believe that Hanan and Knoll have not violated and, by testifying, will not violate REALCA. For that reason, comity, whatever its scope, is not implicated.

### C. *An Appraisal of Real Property*

Respondent argues that the report is not an appraisal report within the meaning of REALCA but a business valuation report and purchase price allocation. The term

"appraisal" is defined by REALCA as meaning "an analysis, opinion or conclusion prepared by a real estate appraiser relating to the nature, quality, value, or utility of specified interests in, or aspects of, identified real estate or identified real property." Me. Rev. Stat. Ann. tit. 32, sec. 13962 (West Supp. 1994). The term "appraisal report" is defined by REALCA as meaning "any written communication of an appraisal." *Id.* As we have stated in section II.A., *supra*, the report contains specific values for, and conclusions with regard to the values of, both improved and unimproved real property. Nevertheless, we need not specifically interpret the meanings of the terms "appraisal" or "appraisal report". Our conclusion with regard to the reach of REALCA renders such a determination unnecessary.

D. *Reach of REALCA*

The purposes of REALCA are manifest in the legislation enacting it. See sec. II.B., *supra*. Those purposes are to protect *consumers* and to meet certain requirements imposed by title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. 101–73, 103 Stat. 511, 12 U.S.C. secs. 3310–3351 (Supp. 1994). The relevant requirement of FIRREA is that, after July 1, 1991, all appraisals performed in connection with "federally related transactions" are to be performed only by individuals certified or licensed in accordance with the requirements of FIRREA. 12 U.S.C. sec. 3348. Indeed, at least 27 States have appraiser licensing or certification laws that refer to FIRREA. The term "federally related transaction" relates to certain lending transactions, and has no relevance here. See 12 U.S.C. sec. 3350.

We have no information that the report was prepared for a consumer, in the sense we infer the Maine legislature intended for that word, or in connection with a federally related transaction. That is also true with regard to any testimony that Hanan and Knoll may give. We ascertain State law as if we were sitting as the highest court of the State. See *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967). We are convinced that the Supreme Judicial Court of Maine would not apply REALCA to Hanan and Knoll solely for preparing the report or testifying in this case. We

conclude that REALCA is inapplicable to Hanan and Knoll's actions in connection with this case. Accordingly, we will not exclude the report or the testimony from evidence in this case.

## V. *Conclusion*

Petitioner's motion in limine will be denied.

*An appropriate order will be issued.*